JENNIE BECKOS v. LESLIE C. SCHOLLE,
SPECIAL ADMINISTRATOR, SUBSTITUTED FOR
TROND P. HAMRE AND BESSIE K. HAMRE, DECEASED.[1]

May 9, 1952.

No. 35,695.

*G. Halvorson,* for appellant.

*Robert A. Forsythe,* for respondent.

[1]Reported in 53 N. W. (2d) 234.

CHRISTIANSON, JUSTICE.

This is an action upon a promissory note in the principal sum of $5,000 executed by defendants Trond P. Hamre and Bessie K. Hamre, husband and wife, on January 20, 1932. The note became due and payable on January 20, 1937. The action was commenced on August 20, 1945, by plaintiff, as executrix of the estate of her deceased sister, Marie Beckos, the payee of the note, who died on September 12, 1944. Both Mr. and Mrs. Hamre died before the action was tried, and the special administrator of Mr. Hamre's estate was substituted as defendant in their place.

The complaint alleged that no payments had been made on the note except the sum of $150 paid on November 13, 1939. The answer specifically denied that any payments had been made, and affirmatively alleged that the note was outlawed under the statute of limitations. In her reply, plaintiff alleged the nonresidence of the Hamres and their absence from Minnesota subsequent to the maturity of the note as tolling the statute for such a period of time as to preclude its operation as a defense and bar to her action.

The case was tried before the court without a jury. The sole issue at the trial was whether the note was outlawed at the time of the commencement of the action on August 20, 1945. Following the trial, findings of fact and conclusions of law were entered in defendant's favor. The trial court found that plaintiff had not sustained the burden of proof on the issue of part payment, and that her action on the note was barred by the statute of limitations. Plaintiff thereafter moved for amended findings and conclusions or *for a new trial. Both motions were denied, and plaintiff appeals* from that part of the order denying her motion for a new trial.

■ Where a note shows on its face that it is more than six years past due, if the holder relies upon part payment to avoid the bar of the statute of limitations, the burden is upon him to prove it. Riley v. Mankato L. & T. Co. 133 Minn. 289, 158 N. W. 391; MacIntyre v. Albers, 175 Minn. 411, 221 N. W. 526; Young v. Perkins, 29 Minn. 173, 12 N. W. 515; 4 Dunnell, Dig. & Supp. §§ 5667a and 5641. Whether or not the Hamres paid the sum of $150 or any

amount on the note in question on November 13, 1939, or at any other time was a fact question. The trial court found that plaintiff had failed to sustain her burden of proof on this issue, and in a memorandum made a part of its findings and conclusions the court characterized plaintiff's testimony with respect to this issue as "hardly clear and convincing."

No useful purpose will be served by a detailed statement of the circumstances surrounding the alleged payment. It is sufficient to state that plaintiff was the only witness who testified with reference thereto, and, contrary to her contention, her testimony was not wholly uncontradicted and unimpugned. The record discloses that she was sole beneficiary of her deceased sister's estate. As executrix thereof, she filed with the Hennepin county probate court in 1945 an inventory and appraisal of the assets in said estate. The note in question, together with other estate assets, was scheduled thereon. Following the description of the note in question these words appeared: "nothing paid." The inventory and appraisal was signed by plaintiff under oath. Her credibility and the weight to be given her testimony was for the trier of fact. 6 Dunnell, Dig. & Supp. § 10344. Since it further appears that her testimony was contradicted and impeached in other respects, we find no basis for disturbing the finding against plaintiff on this issue.

■ The testimony disclosed that the Hamres had owned and maintained their home at 4321 Nicollet avenue south, Minneapolis, Minnesota, from the 1920's up to the time of their death. From 1937 through 1942, they made periodic visits to a farm they owned in North Dakota. Generally, during those years they would leave their home in Minneapolis in the spring of the year and not return until fall. They would take along with them whatever personal belongings they needed, leaving their furniture and other personal effects and belongings at 4321 Nicollet avenue. While in North Dakota they lived in a trailer. They would return to Minneapolis always in the fall after the crops had been harvested. With respect to the statute of limitations, the trial court found that since more than six years had elapsed from the date of the accrual of plain-

tiff's alleged cause of action and the commencement of this action, said note was outlawed. Implicit in this finding is the fact that Mr. and Mrs. Hamre's absences from the state were not such as to toll the statute of limitations.

Plaintiff contends that, since it conclusively appears that while the Hamres were in North Dakota their home was locked and there was no one residing therein upon whom substituted service could be made under M. S. A. 543.05, the running of the statute was tolled during their absence.

The pertinent tolling provision of our statute of limitations (§ 541.13) reads as follows:

"* * * if, after a cause of action accrues, he *departs from and resides out of the state,* the time of his absence is not a part of the time limited for the commencement of the action." (Italics supplied.)

In Nelson v. Sandkamp, 227 Minn. 177, 183, 34 N. W. (2d) 640, 644, 5 A. L. R. (2d) 1136, in considering the foregoing provision of our statute, this court stated:

"* * * The words 'he departs from and resides out of the state' as used in § 541.13 are to be construed as meaning *he departs from and acquires a domicile out of the state.* In other words, the statute contemplates a change of domicile as a prerequisite for tolling the statute of limitations. In this sense, the statute has been construed as if the words 'residence' and 'domicile' are synonymous in meaning (contrary to the accepted distinction in meaning), and that a change of domicile involves a change of a person's true, fixed, and permanent home or place of abode, to which such person intends to return whenever he is absent. Venable v. Paulding, 19 Minn. 422 (488); Kerwin v. Sabin, 50 Minn. 320, 52 N. W. 642, 36 A. S. R. 645, 17 L. R. A. 225; Converse v. Glenn, 162 Minn. 513, 202 N. W. 732; 15 Minn. L. Rev. 668; Restatement, Conflict of Laws, § 9. *A departure from the state which involves merely a temporary sojourn elsewhere, as distinguished from the acquirement of a new domicile, is insufficient to toll the statute of limitations.* Whether a person departs from the state to domicile himself else-

where is a question of fact for the jury. * * * A change of domicile involves an act coupled with an intent." (Italics supplied.)

The foregoing construction of our statute was adopted by this court in the early case of Venable v. Paulding, 19 Minn. 422 (488), and has been consistently followed since that time. However, plaintiff contends that where, as here, an individual defendant is temporarily absent from the state, although domiciled therein, and during his absence substituted service cannot be made upon him under § 543.05, the statute of limitations should be tolled during his absence the same as if he had acquired a domicile out of the state. As previously noted, such a construction of our statute would be contrary to the construction thereof consistently followed in this state since 1873. Nowhere in § 541.13 do the words "process" or "service of process" appear. It is our opinion that if any change in this respect be deemed necessary it should be provided by legislative enactment.

The other errors assigned by plaintiff have been examined, but we find no grounds for reversal. It follows that the trial court's finding that the note was outlawed at the time this suit was instituted is fully justified by the evidence, and the order denying plaintiff's motion for a new trial should be affirmed.

Affirmed.